# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CRANE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-CV-05913 |
| | ) | |
| SHEIN LAW CENTER, LTD. and | ) | Judge John J. Tharp, Jr. |
| BENJAMIN P. SHEIN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case presents the question of whether the allegedly fraudulent concealment of material information in law suits filed against an Illinois corporation in another state suffice to permit an Illinois court to exercise personal jurisdiction over the alleged fraudster. The plaintiff, John Crane, Inc. ("JCI"), an Illinois-based asbestos manufacturer, alleges the Shein Law Center and its principal, Benjamin Shein, concealed information during discovery in multiple asbestos exposure lawsuits so they could extract larger recoveries from JCI and other asbestos manufacturers. The Shein defendants are located in Pennsylvania, and have only had contact with Illinois in the sense that they sued JCI in Pennsylvania state court. Because "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State," *Walden v. Fiore,* 134 S. Ct. 1115, 1123 (2014) (internal quotation marks omitted), the contacts the defendants have had with this Illinois plaintiff during those asbestos lawsuits are insufficient to confer personal jurisdiction over them in Illinois. Accordingly, this case may not go forward in this Court and is dismissed for want of personal jurisdiction.

## BACKGROUND[1]

JCI manufactures and distributes industrial sealing products, such as gaskets and packing, and has its principal place of business in Morton Grove, Illinois. Compl. ¶ 10. For some period of time, JCI's products contained asbestos. As other makers of asbestos-containing products went into bankruptcy, JCI has become a "primary defendant" in asbestos litigation. *See* Pl.'s Ex. 3 at 4, ECF No. 47-4. Benjamin Shein and the Shein Law Center specialize in asbestos-related lawsuits as plaintiff-side counsel. *See* Compl. ¶¶ 11, 13, 14, 22, 24. They are based in Pennsylvania. *Id*. at ¶ 11-12. Both Benjamin Shein and the law firm that bears his name are named as defendants, but (as will be seen) there is generally no reason to differentiate them in resolving their motion so this opinion treats them as if they are the same defendant.

The gist of the complaint is that Shein fraudulently obtained settlements with, and verdicts against, JCI by misrepresenting the exposure of asbestos plaintiffs to JCI's products and concealing their exposure to products of other manufacturers. The complaint focuses on four specific asbestos cases in which JCI (along with other defendants) was sued by Shein, although it alleges the conspiracy stretched beyond these four cases. All four cases were filed in Pennsylvania state courts. *Id*. at ¶¶ 88, 119, 150, 169. Verdicts were rendered against JCI in all four cases, and JCI paid its portion of the judgments. *Id*. at ¶¶ 96, 97, 128, 129, 154, 155, 172, 173. JCI alleges that Shein engaged in a variety of deceptive conduct during the litigation of these cases to conceal its clients' exposure to asbestos in products manufactured by other companies, including delaying filing claims with asbestos manufacturers' bankruptcy trusts until after verdicts had been returned against JCI, falsely stating in discovery that its clients had not

---

[1] The relevant facts are undisputed except where noted, and the disputes are not material to the outcome of this motion. Accordingly, the parties' debate about the standard applicable to this motion is unnecessary.

been exposed to the products of bankrupt manufacturers, and coaching clients not to testify about their exposure to bankrupt manufacturers' products. *See* Compl. ¶¶ 60, 65, 71. This behavior was intended to mislead JCI and the other asbestos suit defendants into paying larger verdict sums. *See id.* at ¶ 77. JCI alleges this increased its litigation costs, prevented it from seeking contribution or indemnity, and prevented effective cross-examination or argument that other products caused the plaintiffs' illnesses. *See* Pl.'s Resp. at 22, ECF No. 47. JCI became aware of this pattern of conduct sometime during the bankruptcy of one of its competitors, Garlock Sealing Technologies ("Garlock"), where the bankruptcy court sharply criticized these practices and concluded that they undermined the reliability of Garlock's settlement history as an estimator of its future asbestos-related liability.[2] *See* Pl.'s Mem. at 4.

During the various Pennsylvania cases against JCI, Shein served complaints on JCI (which noted JCI's Illinois place of business) through CT Corporation, JCI's registered agent in Pennsylvania. *See id.* at 7. These complaints named numerous defendants. For example, the *Golini* case named more than 30 defendants across 10 states and provinces. *See* Compl. Ex. B at 2-6. JCI was the only Illinois company named as a defendant. *See id*. Similarly, the *Baccus* case named 35 defendants across 9 states (the majority being Pennsylvania firms; JCI was the only Illinois company). *See* Compl. Ex. I at 15-19.

During the course of the Pennsylvania cases, Shein's discovery responses were served on JCI's local counsel in Philadelphia. *See id.* at 7; Pl. Ex. 4. In addition to its local counsel in Pennsylvania, JCI hired a Chicago law firm to be its "National Coordinating Counsel" for its

---

[2] Exactly when in the bankruptcy process JCI learned about Shein's practices is a matter of dispute, although not one that is material to resolution of the jurisdictional dispute. JCI contends it did not become aware of the conduct until the unsealing of the bankruptcy in May 2015, while Shein contends JCI knew earlier because JCI made a motion in the bankruptcy in 2014. *See* Pl.'s Mem. at 25.

asbestos litigation and the lawyers of that firm exchanged email and telephone calls with Shein's co-counsel (Waters, Kraus & Paul[3]) regarding the Pennsylvania cases. *See* Pl.'s Ex. 7 at ¶ 5-10. JCI paid its share of the judgments from an account at a New York bank, using checks that included a Morton Grove, Illinois address. *See* Pl.'s Ex. 6 at 2, ECF No. 47-7. In his deposition, Benjamin Shein testified that he and the firm had no business in Illinois, no offices or homes in Illinois, no clients in Illinois, no referrals from Illinois, no solicitation of clients in Illinois, and had never practiced (and are not licensed to practice) in state or federal court in Illinois. *See* Def.'s Reply at 2-3, ECF No. 48. No Shein staff traveled to Illinois to meet with JCI or its lawyers. *See id.* at 3. Shein may have had some conversations with JCI's Chicago lawyers while those lawyers were in Pennsylvania working on the cases there. *See id*. Shein or Shein's co-counsel did communicate with JCI's Chicago lawyers via email and telephone on occasion. *See* Compl. ¶ 94-95; O'Connell Decl., ECF No. 47-8.

JCI filed this case on June 6, 2016. Shein has moved to dismiss the complaint on a plethora of grounds, including lack of subject matter jurisdiction and personal jurisdiction, improper venue, failure to state a claim, and a statute of limitations problem. The jurisdictional questions must, of course, be addressed and resolved in favor of jurisdiction to proceed to the arguments about the sufficiency and timeliness of the complaint. *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875, 877 (7th Cir. 2017) ("We first note that the district court may have committed error by addressing the merits after concluding that it did not have jurisdiction to hear the case.") (*citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law,

---

[3] JCI does not allege that Waters, Krause & Paul had any presence in Illinois. According to JCI, Shein was Waters, Kraus & Paul's local counsel in various Pennsylvania cases. Compl. ¶ 27. Waters, Kraus & Paul is not a defendant in this litigation, although JCI has alleged that it was also part of a RICO enterprise with Shein. *Id*. at ¶ 232.

4

and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.")). Although the Court concludes that Shein's challenge to subject matter jurisdiction under the *Rooker-Feldman* doctrine fails,[4] its argument that this Court lacks personal jurisdiction is persuasive. And because this court is "powerless to proceed" on other matters if it is not satisfied that it has personal jurisdiction, *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999), the Court does not address the substantive challenges to the complaint.

## DISCUSSION

### I. Subject Matter Jurisdiction

Shein's reliance on the *Rooker-Feldman* doctrine to challenge the Court's subject matter jurisdiction is misplaced. The *Rooker-Feldman* doctrine recognizes that federal district courts lack jurisdiction to review state court judgments; such review is vested only in the Supreme Court. The doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

That is not what JCI is seeking here. JCI seeks not to overturn the state court judgments but to advance a claim (Shein defrauded us by concealing information) that is independent of the claims asserted in the state court litigation by Shein's clients (JCI injured plaintiffs by exposing them to asbestos). Although the context of these claims is, to some degree, "intertwined" with the asbestos exposure state court litigation (some of the alleged fraud took place in the exposure

---

[4] "Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). This is not such a case.

5

litigation), that common context does not control the jurisdictional analysis. As the Seventh Circuit explained in *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2017), the question addressed by the *Rooker-Feldman* doctrine is "what injury the plaintiff asks the federal court to redress, not whether the injury is 'intertwined' with something else." What JCI seeks to redress is the damage caused by the scheme to conceal asbestos exposure, not damage caused directly by the state court judgments. That the two are different can be seen from the fact that much of the damage claimed by Shein occurred before there were any state court judgments and would have occurred even had there been no judgments. JCI's principal claim is that the concealment of relevant information injured JCI by skewing its evaluation of its clients' potential liability and inflating the price of settlement. That injury is both antecedent to, and independent of, any judgments Shein obtained in the state court lawsuits. JCI's claim in this case, then, cannot have been "caused by" those judgments. *See Brown v. Bowman,* 668 F.3d 437, 442 (7th Cir. 2012) ("an independent prior injury that the state court failed to remedy" is not barred by *Rooker-Feldman*).

In addition to the inflation of the cases' settlement value, JCI claims at least two additional injuries that were not caused by the state court judgments. First, it claims increased litigation costs, which would have been incurred regardless of the judgment entered in each case. Second, JCI claims it lost the opportunity to sue the concealed bankruptcy trusts for indemnification. *See* Pl.'s Resp. at 16-17. The costs of litigation can be, but are not always, losses independent of a state court's judgment. *See Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014). Violations of federal law during the course of the litigation may impose additional costs, as *Harold* also confirms. *Id.* at 886 (illustrating the point by noting that a violation of the Fair Debt Collection Practices Act by filing suit in an improper venue would have imposed an injury independent of the judgment by increasing litigation costs). That is the case here, where the

alleged fraud made the litigation of the suit harder and more costly. The Court does not take JCI's argument to be that it should not have been subject to suit at all. Rather, JCI argues that Shein's misrepresentations caused it to incur additional costs in the litigation. These costs are not the inevitable consequence of the filing of the asbestos exposure suits, or the direct result of a court order, unlike attorney's fees. *See Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 605 (7th Cir. 2008) (*Rooker-Feldman* bars second suit over misrepresentations made in order to gain court-ordered attorney's fees).

The loss of independent indemnification claims is also clearly independent of the state court judgments. Nothing about the state court's judgments prohibited JCI from seeking indemnification, nor would any indemnification claims have in any way vacated the state court's judgments. *See Taylor v. Fannie Mae*, 374 F.3d 529, 533 (7th Cir. 2004) (*Rooker-Feldman* applies when claim would be "tantamount to a request to vacate the state court's judgment"). Although it arises from the same facts, the fact that JCI was held liable in state court does not cause the harm of being unable to seek indemnification due to Shein's misrepresentations.

Because JCI's suit does not seek to invalidate the state court judgments, but to recover damages arising from an alleged scheme to defraud that was independent of those judgments, it does not fall within the narrow class of cases encompassed by the *Rooker-Feldman* doctrine and this court has subject matter jurisdiction to entertain its claims.

## II. Personal Jurisdiction

The Court concludes, however, that it lacks personal jurisdiction over the defendants named in the complaint. "The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it," although when no evidentiary hearing is held the plaintiff need make out only a *prima facie* case. *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487,

491 (7th Cir. 2014). Illinois's long-arm statute allows personal jurisdiction to be exercised whenever the Constitution allows, so the plaintiff must only demonstrate that personal jurisdiction comports with the Due Process Clause. *Id*. Personal jurisdiction may be general or specific. General jurisdiction exists where the defendant's contacts with the forum state are "so 'continuous and systematic' as to render them essentially at home in the forum." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Shein Law Center is incorporated and has its principal place of business in Pennsylvania, where Benjamin Shein is domiciled. Neither defendant has contacts with Illinois independent of any contacts that may exist by virtue of the conduct at issue in this case. JCI does not assert that this Court has general personal jurisdiction over the defendants.

The question is therefore specific personal jurisdiction. The parties' dispute centers on whether Shein had the "minimum contacts" required such that hauling him into Illinois court would not violate "traditional notions of fair play and substantial justice." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). *Walden,* which is the Supreme Court's most recent exegesis on the question of specific general jurisdiction, governs the analysis. The Court in *Walden* made clear that "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id*. at 1122 (quotations omitted, emphasis in original). That inquiry must distinguish between Shein's contacts with **Illinois** and Shein's contacts with "persons who reside there." *Id*. Only the former count; "the plaintiff cannot be the only link between the defendant and the forum." *Id*. In the context of an intentional tort claim such as JCI asserts in this case, that means that "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the

forum." *Id.* at 1123. Here, the undisputed facts demonstrate that Shein lacks sufficient contacts with the state of Illinois to permit this suit to go forward in this court.

JCI argues that Shein has sufficient contacts with Illinois because Shein sued JCI and directed false discovery responses "at" JCI in Illinois (albeit through Pennsylvania local counsel), and then cashed checks that drew on JCI's Illinois bank account. *See* Pl.'s Resp. at 9-10. But these alleged contacts rest on connections between Shein and JCI, on the one hand, and JCI and Illinois, on the other. They fail to establish a direct link between Shein and Illinois; that is, a link that does not flow through JCI.

JCI is the sole link between Shein and Illinois. Shein has no contacts with the state of Illinois that are independent of JCI. Shein has no business in Illinois, no offices or homes in Illinois, no clients in Illinois, no referrals from Illinois, no solicitation to clients in Illinois, and has never practiced (and is not licensed to practice) in state or federal court in Illinois. *See* Def.'s Reply at 2-3. And while it is true that a defendant's relationship with a forum plaintiff "may be significant in evaluating [its] ties to the forum," *Walden,* 134 S. Ct. at 1123, Shein had no relationship with JCI. Shein did not seek out JCI's services and attempt to develop a relationship with the company or in any other way involve itself with the company or with the state of Illinois. Shein made no effort to direct its activities at Illinois, either in the sense of pursuing clients here or in the sense of making an effort to routinely sue Illinois defendants. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (purposeful direction include availing oneself of "the privilege of conducting business" in the forum state and availing oneself of the "benefits and protections" of the forum state's laws).

JCI is an Illinois company, but Shein did not make or exploit its own contacts with Illinois in order to defraud JCI. The complaint alleges that the defendants fabricated false

asbestos "exposure histories" for their clients in asbestos litigation against JCI and others and systematically concealed evidence of their clients' exposure to other sources of asbestos. The asbestos litigation did not target JCI in Illinois; the complaints were filed, litigated, and tried in Pennsylvania. Shein's allegedly wrongful conduct—the concealment of information in its possession about its clients' exposure to asbestos supplied or manufactured by bankrupt companies—also took place in Pennsylvania, where the firm is located. The focal point of Shein's conduct against JCI was Pennsylvania, not Illinois; to the extent that Shein was seeking to defraud asbestos manufacturers, including JCI, it was doing so in Pennsylvania, the state where the alleged RICO enterprise operated and where it engaged in the alleged racketeering acts by concealing other asbestos exposure.

That Shein sued an Illinois corporation, outside the state of Illinois, does nothing to connect Shein to the state where JCI is headquartered.[5] The identity and location of the companies that (allegedly) injured Shein's clients is entirely fortuitous and beyond Shein's control; JCI has presented no evidence (or even allegation) that suing Illinois residents was a significant part of Shein's business. In fact, JCI was the only Illinois company among dozens sued by Shein in the asbestos exposure suits, a fact that makes clear that JCI's status as a defendant in no way demonstrates any attempt by Shein to "purposely direct its activities," or to "target," Illinois. That Shein represented clients who claimed, in courts outside the state of Illinois, that JCI had injured them does not connect Shein to Illinois; it connects Shein to JCI. That *JCI*, not Shein, is connected to Illinois will not do as a basis for exercising personal jurisdiction. Due process does not permit the exercise of personal jurisdiction "based on the

---

[5] For this reason, the parties' dispute about whether Shein even knew that JCI was an Illinois corporation is irrelevant. The Court assumes that Shein did know that fact, but knowing a defendant's state of incorporation does not establish a connection between the plaintiff's attorneys in the suit and that state.

10

'random, fortuitous, or attenuated' contacts [a defendant] makes by interacting with other persons affiliated with the State." *Walden,* 134 S. Ct. at 1123 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)).

The complaint, moreover, was not even served on JCI in Illinois; rather, JCI's contacts with the state of Pennsylvania enabled Shein to serve the complaint on JCI's registered agent in Pennsylvania. Similarly, Shein's discovery responses were not provided to JCI or its attorneys in Illinois, but were served by Shein exclusively on JCI's local counsel in Philadelphia. It is undisputed, moreover, that all communications (save perhaps a single email; Compl. ¶¶ 94-95) between Shein and JCI's counsel—including its counsel from Chicago—took place in Philadelphia.[6] For these reasons, JCI can argue only that these communications were directed "at JCI, an Illinois corporation," rather than asserting that Shein created any contacts with the state by sending communications to JCI *in* Illinois; the principal communications JCI identifies as connecting Shein to Illinois had no connection to Illinois at all, save the fact that JCI is an Illinois corporation. Again, that won't do.[7]

---

[6] In any event, communicating with just a few state residents by email generally does not confer personal jurisdiction, even if those emails were misleading, unless the plaintiff can demonstrate the defendant was targeting residents of a specific state. *See Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014).

[7] JCI also argues that Shein's co-conspirator (Waters, Kraus & Paul) negotiated with "JCI's outside counsel in Illinois." Pl.'s Resp. at 17. Reviewing the provided declaration, it appears that JCI means that Waters, Kraus & Paul exchanged emails and phone calls with JCI's lawyers, who were located in Illinois, not that any Waters, Kraus & Paul attorneys set foot in Illinois in order to negotiate. *See* O'Connell Decl., Dec. 2, 2016, ECF No. 47-8. As the Seventh Circuit has noted, the conspiracy theory of personal jurisdiction "may not be valid in Illinois." *Smith v. Jefferson Cnty Bd. of Educ.*, 378 F. App'x 582, 585 (7th Cir. 2010). Other decisions of the Illinois Appellate Court certainly suggest as much, *see Knaus v. Guidry*, 389 Ill. App. 3d 804, 825, 906 N.E.2d 644, 661 (2009); *Ploense v. Electrolux Home Products, Inc.*, 377 Ill. App. 3d 1091, 1107, 882 N.E.2d 653, 667 (2007); *see also Green v. Advance Ross Electronics Corp.*, 86 Ill. 2d 431, 440-41, 427 N.E.2d 1203, 1208 (1981). There has, however, been some disagreement. See *Cleary v. Philip Morris, Inc.*, 312 Ill. App. 3d 406, 410, 726 N.E.2d 770, 774 (2000) ("We therefore hold that in circumstance where the defendant has actively supported a conspiracy where one of its members

JCI argues that in communicating with its agents in Philadelphia, Shein was effectively speaking to JCI and was therefore carrying out its purpose to "defraud JCI *in Illinois*." Resp. at 11. But, again, that Shein was communicating with JCI's agents located in Philadelphia does not establish a connection between Shein and Illinois; at most it creates another connection between Shein and JCI. By JCI's logic, the act of filing the suit would itself suffice to connect Shein to Illinois, because the complaint would inevitably be communicated by some agent of JCI to JCI's headquarters in Illinois. But if filing suit against a defendant were enough to confer personal jurisdiction over the defendant in the plaintiff's home state, law firms could be sued in any state in which any defendant they had ever sued happens to be domiciled—all it would take is a claim that the filing or conduct of the suit was tortious in some manner. The Seventh Circuit has shunned, as inconsistent with due process, interpretations of "minimum contacts" like this that would create "*de facto* universal jurisdiction." *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (rejecting argument "that a plaintiff could bring suit in literally any state where the defendant shipped at least one item" as creating *de facto* universal personal jurisdiction). Specific personal jurisdiction requires acts by the

---

operated in Illinois, there may exist the 'minimum contacts' necessary to fairly assert jurisdiction."). Furthermore, some courts allow a person to "purposefully make minimum contacts with the forum state through someone else." *Khan v. Gramercy Advisors, LLC*, 61 N.E.3d 107, 145 (Ill. App. Ct. 2016). In this case, however, any communications Waters, Kraus & Paul had with JCI's Illinois counsel, to the extent they can be attributed to Shein, do not change the analysis. They are still fundamentally contacts exclusively with an agent of JCI. As a corporation, JCI can only interact through its agents. Thus, like an algebraic equation when all the proper substitutions are made, Waters, Kraus & Paul communicating with JCI's lawyers is, at best, just Shein communicating with JCI. For the reasons discussed, those communications do not indicate Shein had minimum contacts with Illinois outside of its interactions with JCI. Carried to its logical extreme, moreover, this substitution would suggest that Shein never really had any communications with JCI at all: Shein's ***clients*** communicated with JCI. JCI, despite suggesting that the actions of Shein's co-counsel can be attributed to Shein, does not suggest the Court should take agency theory *that* far.

defendant specifically targeting the forum state, not incidental effects on the in-forum plaintiff caused by the defendant's out-of-state conduct.

JCI's argument that Shein's Pennsylvania misrepresentations would inevitably be communicated to JCI in Illinois also ignores the fact that, as a corporation, JCI acts only through agents. In that sense, any communication to one agent of JCI is a communication to the company itself; Shein's communications were received by JCI when they first reached JCI's attorneys—its authorized agents—in Pennsylvania. The proposition that JCI did not receive communications from Shein until those communications had been forwarded to additional agents of JCI, who happened to be in Illinois, makes little sense. Who these other agents were, or why their knowledge—but not that of JCI's Pennsylvania agents—was imputable to the company, JCI does not say.

This underscores the point the Seventh Circuit made in *Advanced Tactical* about the inadequacy of email communications to establish minimum contacts: where a communication is received may be entirely fortuitous; more significant is whether, in making the communication, the defendant had somehow targeted the forum state. 751 F.3d at 802-03. Here, there is no basis to conclude that, in making (alleged) misrepresentations to JCI in connection with law suits pending in the state of Pennsylvania, that Shein was somehow targeting the state of Illinois. Shein was merely communicating with JCI, a defendant in lawsuits pending in Pennsylvania.

This is all the more apparent when one considers that the allegedly fraudulent representations were not peculiar to JCI and had nothing to do with Illinois. JCI does not address the fact that these fraudulent misrepresentations were evidently made to ***all*** the defendants in these suits. *See* Compl. ¶ 52 ("such evidence substantially reduced JCI's (and other tort-defendants') potential liability"), *id.* at ¶ 77 ("The Defendants' ultimate objective was to use the

fabricated exposure histories to mislead JCI, other tort defendants, courts, and juries"). The purpose of the statements was not "to defraud JCI in Illinois," but to defraud JCI (and the other defendants) where the litigation that (as alleged) was a vehicle for the fraud scheme was pending. By suing in Pennsylvania a single Illinois company along with dozens of other companies domiciled in other states, Shein plainly did not "target" Illinois.

And, indeed, the Seventh Circuit has expressly rejected the premise that litigating on behalf of a client in a law suit pending outside a defendant's home state suffices to confer personal jurisdiction over the attorney in the defendant's home state, even where the law suit was alleged to have been tortious. In *Wallace v. Herron,* 778 F.2d 391 (7th Cir. 1985), the Court of Appeals affirmed the dismissal for lack of personal jurisdiction of a malicious prosecution case brought in Indiana against attorneys who had previously sued the Indiana plaintiff in a California state court on behalf of a client there, holding that serving pleadings and discovery in a case pending in another state did not establish minimum contacts between the attorneys who conducted that litigation and the home state of the defendant in that litigation:

> Plaintiff argues that the defendants' minimum contacts with Indiana are established because the defendants served interrogatories, requested the production of documents, and caused the plaintiff to respond to five complaints in Indiana where the plaintiff resides. The fact of the matter, however, is that the defendants filed these motions on behalf of their clients in a California court pursuant to a California lawsuit, and it would be unreasonable to require the defendants to appear in Indiana to defend this suit on the basis of such attenuated contacts.

*Id.* at 394.[8] To the same effect is the Seventh Circuit's opinion in *Coté v. Wadel*, 796 F.2d 981 (7th Cir. 1986), where the court affirmed a dismissal for lack of personal jurisdiction of a

---

[8] It bears noting that the Seventh Circuit reached this conclusion even though *Wallace* involved a claim of malicious prosecution—that is, a claim that the entire law suit was tortious, not merely that some relevant evidence had been concealed in the course of an otherwise legitimate law suit. In other words, unlike this case, the transmission of every pleading,

14

malpractice claim by a resident of Wisconsin against attorneys who represented her with respect to a case in Michigan despite the fact that the Michigan attorneys were providing legal services to the Wisconsonite and despite the communications between the two states that were necessary to that task. *See id*. at 984 (noting the lack of connection between the Michigan suit and Wisconsin and holding that "[t]he handful of letters and phone calls that passed between Coté and the Wadel firm is not enough to close the gap."). *See also Drobny v. Lanham, et al.,* No. 16-3511, 2017 WL 1016889, at *2 (7th Cir. Mar. 15, 2017) (telephone and email communications by lawyers negotiating merger insufficient for personal jurisdiction over lawyers).

As these cases instruct, directing pleadings, discovery, and other litigation communications to an Illinois citizen facing suit in some other state—even in furtherance of a tortious scheme—is simply not the same as targeting that citizen *in Illinois.* These sorts of litigation communications (and any others that may have occurred with JCI's "National Coordinating Counsel" located in Chicago) are fortuitous incidents to the fact that Shein sued a company based in Illinois, incidents of *JCI's* connection (or that of its lawyers) to Illinois, not Shein's. They result not from any act by Shein to connect with Illinois, but of a decision by JCI to retain counsel in Illinois. That sort of unilateral action by a plaintiff "cannot satisfy the requirement of contact with the forum State" by the defendant. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). That is why, in *Walden,* the Supreme Court dismissed as "unavailing" reliance on the communications between the plaintiff's attorney in Nevada and the defendant police officer in Georgia to establish the existence of personal jurisdiction over the officer in Nevada. JCI's reliance on Shein's incidental communications with its counsel in Illinois is similarly "unavailing." *See also Philos Technologies, Inc. v. Philos & D, Inc.*, 802 F.3d 905, 915-16 (7th

---

discovery request, or other communication in the state court litigation in *Wallace* could be said to be tortious. *See also infra* at 18.

15

Cir. 2015) (incidental communications about a contract the parties entered into did not suffice to establish minimum contacts for personal jurisdiction over either contract or tort claims arising from the relationship).

Also falling into the category of fortuitous consequences of unilateral acts by JCI are its payments of judgments in the asbestos exposure cases with checks bearing an address in Morton Grove, Illinois. Even putting aside the fact that the check was drawn on a *New York* bank, Pl.'s Ex. 6 at 2-7, ECF No. 47-7, JCI's payments, even if deemed to be from Illinois, do nothing to show that Shein had its own contacts with Illinois. If acceptance of a payment from a state, especially money sent voluntarily by the plaintiff, were sufficient to confer personal jurisdiction, a defendant would have to do remarkably little (if anything) to be subject to personal jurisdiction in the payor's state. In cases like *Advanced Tactical* and *Walden*, the defendant knew that it was taking money that would otherwise likely be in a bank in the forum state (either from sales to residents in that state or by confiscating the cash of residents of the forum state), but those cases do not so much as hint that the forum plaintiff's choice of banking relationship has any relevance to the assessment of whether a defendant has sufficient contacts with the forum state.

The origin of the funds paid to the defendants is a particular species of a more general argument that JCI also advances to no effect. That Shein could foresee that its (allegedly) fraudulent communications would injure JCI in Illinois, or that JCI was in fact injured in Illinois, does not determine the jurisdictional analysis. "[T]he mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden,* 134 S. Ct. at 1126. As *Walden* explains, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." 134 S. Ct. at 1125.

Where the same injury would have occurred had the plaintiff been located elsewhere, that injury cannot be said to be the product of the defendant's contacts with the forum state. Thus, in *Walden*, the Court pointed out that the plaintiff would have sustained the same injury caused by the wrongful confiscation of their funds wherever they may have traveled, a fact that shows that the foreseeable effects of the conduct are based not on the defendant's contacts with the forum, but the plaintiff's. *Id.* at 1125. By contrast, and as *Walden* further explains, *Calder v. Jones*, 465 U.S. 783 (1984), exemplifies a case in which the defendant's own connections to the forum state were causal factors in the plaintiff's injury. In *Calder*, the Court found personal jurisdiction over defendants alleged to have defamed actress Shirley Jones because the claimed injuries were the product of connections that the defendants had made with the forum state independent of their misrepresentations about Jones; as the Court explained, the defendants "expressly aimed their intentional, and allegedly tortious, actions" at California because they knew that was the location where, based on their own contacts with the state, the allegedly defamatory article would have a devastating impact. That injury "***would not have occurred but for***" the defendant's conduct in California. *Walden,* 134 S. Ct. at 1124 (emphasis added). That is not the case here. JCI does not allege or argue that Shein had any contacts with Illinois independent of its contacts with JCI or that the injuries it incurred as a result of Shein's tortious conduct were qualitatively or quantitatively different than they would have been had JCI been headquartered in another state. JCI would have sustained the same injuries regardless, and that goes to show that its injuries in Illinois are the product of its own contacts with Illinois, not Shein's.

Most of the caselaw on which JCI relies predates *Walden* and *Advanced Tactical,* and its response brief takes on neither case. JCI relies heavily instead on *Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012), which was issued before either *Walden* or *Advanced Tactical*, for the

proposition that fraudulent representations made to a plaintiff can provide minimum contacts. In *Felland*, a real estate developer met a couple from Wisconsin, convinced them to purchase a condominium in Arizona, and sent them several letters, emails, and phone calls to assuage their doubts about the prospects of the development (which in fact had no substantial outside investment). *Id*. To the extent that *Felland* stands for the proposition that a defendant's communications with a forum state plaintiff, standing alone, provide jurisdictionally sufficient minimum contacts with the forum, it stands in considerable tension with *Walden* and *Advanced Tactical*; as the Seventh Circuit explained in *Advanced Tactical*, "after *Walden*, there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum. Any decision that implies otherwise can no longer be considered authoritative." *Advanced Tactical*, 751 F.3d at 802. Consistent with that observation, the Court of Appeals held in *Advanced Tactical* that the defendant's misleading communications to residents of the forum state were insufficient to confer personal jurisdiction in the forum state over the plaintiff's trademark infringement claims. There, the defendant had sent at least two misleading email blasts to residents of the state, had made an interactive website available to state residents, had created mailing list of state residents, and had sold allegedly infringing items in the state, yet the Seventh Circuit found these contacts insufficient to confer personal jurisdiction. Any communications from Shein that entered the state in this case are no more substantial or sufficient.

*Felland* is, moreover, also distinguishable from this case because in *Felland* there was a business relationship between the parties that the developer had voluntarily pursued and which was entirely based on the developer's (alleged) fraud; every communication from the developer was a part of the alleged scheme to defraud. Here, by contrast, the parties had no business relationship at all; that Shein (more accurately, Shein's clients) sued JCI was not the product of a

18

voluntary decision to enter into a commercial relationship with an Illinois resident, but of circumstances over which Shein had no control—namely, which companies had manufactured the asbestos-containing products to which its clients had been exposed. And unlike *Felland*, here the forum plaintiff (JCI) does not contest that it was rightfully a part of the Pennsylvania suits or suggest that the Pennsylvania lawsuits were entirely fraudulent (JCI was found liable in each, after all). Rather, JCI alleges that certain specific discovery responses and representations were fraudulent. Simply put, this is not a case in which a huckster targeted a specific Illinois resident for a scam, but rather a case in which a few (albeit serious) misrepresentations are alleged to have been made to multiple defendants across multiple states as a part of an otherwise legitimate lawsuit. The law firm cases, such as *Wallace*, provide a more analogous situation to the extent pre-*Walden* law remains authoritative.[9]

In short, JCI has failed to meet its burden of establishing a prima facie case for the exercise of personal jurisdiction over Shein by this court. The undisputed facts demonstrate that JCI's claim does not arise from contacts Shein created with the state of Illinois; any contacts Shein has had with this state were the entirely fortuitous consequences of its clients' decisions to sue JCI, an Illinois corporation, in a Pennsylvania state court. Those decisions were (so far as the undisputed facts establish) driven not by any purpose to target Illinois residents but to advance claims Shein's Pennsylvania clients happened to have been exposed (as the finders of fact found in all four cases) to a product manufactured by a company based in Illinois. Such activities are "entirely fortuitous, depending wholly on activities out of the defendant's control." *Advanced*

---

[9] Other cases on which JCI relies, like *Greene v. Mizuho Bank Ltd.*, 169 F. Supp. 3d 855 (N.D. Ill. 2016) and *Medallion Products, Inc. v. H.C.T.V., Inc.*, 2007 WL 3085913 (N.D. Ill.), are distinguishable for essentially the same reasons. *Greene*, moreover, was a class action, so it involved claims that the defendant defrauded many other forum citizens in the same manner.

*Tactical Ordnance Sys.*, 751 F.3d at 803. Accordingly, this court lacks personal jurisdiction over Shein.

\*   \*   \*

For the foregoing reasons, the motion to dismiss for lack of personal jurisdiction is granted. This case is dismissed. The dismissal is with prejudice insofar as it terminates this law suit in this District. It is without prejudice, however, to its refiling in a court with jurisdiction over both the claims and the parties.

Dated: March 23, 2017

John J. Tharp, Jr.
United States District Judge